UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | CASE NO. 15-51354 |
| KIDS ONLY II OF LAFAYETTE, LLC | Chapter 11 |
| Debtor. | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**COMES NOW**, RREF II PEBP-LA, LLC ("**RREF**"), as a creditor and party in interest and who, pursuant to 11 U.S.C. § 362, files this Motion for Relief from the Automatic Stay (this "**Motion**"). In support thereof, RREF respectfully states as follows:

### I. JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Motion is filed pursuant to 11 U.S.C. § 362. Venue is proper pursuant to 28 U.S.C. § 1409(a).

### II. BACKGROUND

On October 20, 2015, Kids Only II of Lafayette, III ("**Kids Only II**" or the "**Debtor**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.[1] The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee of creditors has been established.

---

[1] The Debtor's affiliate, Kids Only III of Lafayette ("**Kids Only III**") filed bankruptcy the same day. That chapter 11 case is pending before this Court. *In re Kids Only III of Lafayette, LLC*, No. 15-51355 (Bankr. W.D. La).

{JX182444.1}               1

A.   THE DEBTOR'S FIRST BANKRUPTCY

On March 14, 2011, Kids Only II[2] filed its first voluntary petition for relief under chapter 11 (the "**First Bankruptcy**").[3] Through its schedules, the Debtor alleged it possessed assets totaling $177,000.00, with liabilities due in the amount of $203,500.00. [First Bankruptcy, Dkt. #1]. At the time, the principal creditors were Regions Bank ("**Regions**") and the Internal Revenue Service ("**IRS**").[4] Schedule D provided its real property was valued at $150,000.00, and that this real property secured a claim by Regions in the amount of $140,000.00. [First Bankruptcy, Dkt. #1]. As of May 23, 2011, the Debtor was delinquent in filing, *inter alia*, its monthly operating reports, 2009 and 2010 tax returns, balance sheets, profit and loss statements for February, a voided-preprinted check styled "Debtor In Possession" on its Regions bank account; and cash flow projections for six months.

Kids Only II filed its chapter 11 plan (the "**Chapter 11 Plan**") on July 28, 2011. On September 14, 2011, the Court entered an order confirming the Chapter 11 Plan. [First Bankruptcy, Dkt. #48]. The Chapter 11 Plan went effective on October 4, 2011 and provided for payments "outside th[e P]lan" to Regions on what was, at that point, its $141,491.53 secured claim. [*See* First Bankruptcy, Dkt. #64]. On November 30, 2011, the Debtor filed a Motion for Entry of Final Decree. [First Bankruptcy, Dkt. #64], pursuant to which the Court entered an order administratively closing the First Bankruptcy as of January 12, 2012. [First Bankruptcy, Dkt. #74]. The Final Decree was entered March 16, 2012. [First Bankruptcy, Dkt. #75].

---

[2]   Kids Only III filed for bankruptcy shortly after on or about August 15, 2011.

[3]   A copy of the First Bankruptcy Docket is attached hereto as Exhibit A.

[4]   Kids Only II also listed the Lafayette Parish Tax Collector as a creditor under Schedule E for a $3,500.00 claim relating to "2010 property and contents taxes." [First Bankruptcy, Dkt. #1].

{JX182444.1}                                2

### B. THE DEBTOR'S MOTIVE FOR SECOND BANKRUPTCY

RREF is the holder of a Forbearance Note ("**Note 1**"), dated September 24, 2012, in the original principal amount of $110,153.49. Richard Michael Scelfo and Deborah Gonzales Scelfo, as authorized members and managers of the Kids Only II, executed Note 1 which was made payable to Regions, its successors, and its assigns. On or about December 23, 2013, Regions assigned Note 1 to RREF II PEBP Acquisitions LLC pursuant to an *allonge*. Note 1 was then assigned to RREF by virtue of a second *allonge* dated on or about August 28, 2014. The second *allonge* was made part of the original Note 1 (referred to collectively as the "**First Amended Note**").

RREF is also the holder of a Multiple Indebtedness Mortgage (the "**MIM**"), dated December 31, 2003, in favor of Regions and any of its future successors or assigns. The MIM was granted to secure prompt and punctual payment for the satisfaction of all present and future loans, advances, and/or other extensions of credit obtained and or to be obtained up to $50,0000,000.00. Richard Michael Scelfo and Deborah Gonzales Scelfo, as authorized members and managers of the Kids Only II, executed the MIM granting Regions, its successors, or its assigns, all present and future rights, title, and interest in and/or over the building and land located at 224 Julian Circle, Lafayette, Louisiana (the "**First Encumbered Property**").[5]

---

[5] The legal description of the First Encumbered Property is as follows:

Those certain parcels of ground, together with all improvements thereon, and all rights, ways, privileges, servitudes, appurtenances thereof, being known and designated as LOTS ONE (1) and SIX (6) of HILLSIDE ACRES SUBDIVISION, a subdivision of the Parish of Lafayette, Louisiana on that certain plat of survey prepared by Fred L. Colomb attached to that act recorded under Entry No. 328903 and made part thereof by reference, and being described with reference thereto as having a frontage on Julian Drive (now known as Julian Circle) and having such dimensions, boundaries and measurements as are more fully shown on said plat of survey, LESS AND EXCEPT: That certain parcel sold to the State of Louisiana and the Department of Transportation and Development of the State of Louisiana, designated as "Parcel 7-1" in that act recorded under Entry No. 79-12138 of the records of Lafayette Parish, Louisiana.

The MIM was assigned first to RREF II PEBP Acquisitions, LLC, and then to RREF. The assignment to RREF was dated August 28, 2014, and recorded in Lafayette Parish, Louisiana at recording number 2014-00040318. As a result of the First Amended Note and the assigned MIM, RREF is a secured creditor with a perfected interest in the First Encumbered Property.

Pursuant to the MIM, Kids Only II confessed judgment and consented to the seizure and sale of the mortgaged property under ordinary process if the First Amended Note was not paid in accordance with its terms. Additionally, Kids Only II waived: the demand for payment prior to seizure, the benefits of appraisal of the property prior to a judicial sale, and all homestead exemptions to which it may have been entitled. The MIM also provides the First Encumbered Property may not be sold without RREF's written consent.

The First Amended Note and the MIM provided that if Kids Only II failed to meet the repayment terms of the First Amended Note, then the holder of said First Amended Note and the MIM would have the right to accelerate the terms thereof and that the full unpaid balance in principal and interest would immediately become due and owing, together with finance charges, costs, expenses, attorneys' fees, and other fees. Kids Only II has been in default under the First Amended Note since June 4, 2013. Written notice of default was provided to Kids Only II on February 14, 2014.

RREF is also the holder of a Collateral Mortgage Note (the "**Mortgage Note**"), dated May 31, 2002, in the original principal amount of $450,000.00. The Mortgage Note is secured by and paraphed "Ne Varietur" for identification with a Collateral Mortgage dated May 31, 2002 (the "**Mortgage**"). The Mortgage was executed by Richard Michael Scelfo and Deborah Gonzales Scelfo, as authorized members and managers of the Kids Only II and recorded in

Lafayette Parish, Louisiana, at recording number 02-02604. Through the Mortgage, Kids Only II specifically "present[ed], mortgage[d], affect[ed] and hypothecate[d] in favor of [Regions Bank] and the future holder or holders of the Note" the building and land located at 700 La Neuville Road, Lafayette, Louisiana (the "**Second Encumbered Property**")[6] to secure the full and prompt payment of the Mortgage Note, together with interest, attorneys' fees and collection costs, and to secure the payment of insurance premiums, taxes, keeper's fees, and the performance of all obligations of Kids Only II under the Mortgage.

Pursuant to the Mortgage, Kids Only II also confessed judgment on any amounts owed and agreed that, if the Mortgage became due and payable and was not promptly paid when due, Regions (at its option) would have the right (among others) to declare the Mortgage due and payable, without demand and without notice. Regions was also given the right in the Mortgage to cause the Second Encumbered Property to be seized and sold, an entirety or in parcels, under

---

[6] The legal description of the Second Encumbered Property is as follows:

Those certain tracts or parcels of land, together with all buildings and improvements situated thereon in Section 25, Township 10 South, Range 4 East, Lafayette Parish, Louisiana, being known and designated as LOT ONE (1) and LOT TWO (2), on a final plat of survey of GREEN MEADOWS SUBDIVISION, dated September 20, 1978, prepared by Caffery, Pate and Reaux, Consulting Engineers and Land Surveyors, which said plat is attached to and paraphed "Ne Varietur" for identification with an Act of Dedication and Restrictive Covenants for Green Meadows Subdivision, recorded under Entry No. 79-003571, records of the Clerk of Court of Lafayette Parish, Louisiana, the property herein described being more particularly described by reference to the aforesaid plat, as follows:

LOT ONE (1), measuring sixty (60') feet, more or less, on Vivian Drive, with a rear line of 84.56 feet, more or less, subject to a 22.5 feet proposed right-of-way line for future widening of La Neuvelle Road No. 1, and measuring 125.60 feet on the northern boundary of the property, and 145.24 feet on the southern boundary of the property, the property herein being described being bounded north by La Neuvelle Road No. 1, east by Vivian Drive, south by Lot 2 of said subdivision, and west by property now or formerly of George C. Veazey, and having such further dimensions, boundaries and measurements as are shown on the aforesaid plat of survey.

LOT TWO (2), measuring 75 feet frontage on Vivian Drive, with a rear line of 75 feet, a northern boundary of 145.24 feet, and a southern boundary of 145.64 feet, the property herein described being bounded north by Lot 1 of said subdivision, easterly by Vivian Drive, southerly by Lot 3 of said subdivision, and westerly by property now or formerly of George C. Veazay, and having such further dimensions, boundaries and measurements as are shown in the aforesaid plat of survey

executory or other legal process, without appraisement as such was expressly waived, and as Regions may determine, to the highest bidder for cash, or on such other terms acceptable to Regions. Regions was further authorized and empowered to carry out and enforce all incorporeal rights pledged by Kids Only II under the Mortgage. On or about December 23, 2013, Regions assigned the Mortgage to RREF II PEBP Acquisitions, LLC. The Mortgage was thereafter assigned to RREF. The assignment to RREF was dated August 28, 2014, and recorded on October 30, 2014, in Lafayette Parish, Louisiana at recording number 2014-00040318.

RREF is also the holder of a Forbearance Note ("**Note 2**"), dated September 24, 2012, in the principal amount of $116,275.61. Note 2 was made payable to Regions, its successors, and its assigns and executed by Richard Michael Scelfo and Deborah Gonzales Scelfco as authorized members and managers of Kids Only II. On or about December 23, 2013, Regions assigned Note 2 to RREF II PEBP Acquisitions LLC pursuant to an *allonge*. Note 2 was then assigned to RREF by virtue of a second *allonge* dated on or about August 28, 2014. The second *allonge* was made part of the original Note 2 (referred to collectively as the "**Second Amended Note**"). As a result of the Second Amended Note and the assigned Mortgage and succeeding documents, RREF is a secured creditor with a perfected interest in the Second Encumbered Property.

Kids Only II is in default for, among other things, failure to make the monthly payments due pursuant to the Second Amended Note since July 4, 2013. On February 14, 2014, written notice of default and demand was sent to Kids Only II for its repeated failure to pay installments when due. Pursuant to the Second Amended Note and these defaults, all amounts due and owing thereunder have been accelerated and made due and exigible.

Finally, RREF is the holder of a Forbearance Note (the "**Guaranteed Note**"), dated September 24, 2012, in the original principal amount of $97,503.21. The Guaranteed Note was

made payable to Regions, its successors, and its assigns and executed by Richard Michael Scelfo and Deborah Gonzales Scelfco as authorized members and managers of the borrower, Kids Only III. As authorized members and managers of Kids Only II, Richard Michael Scelfo and Deborah Gonzales Scelfo also executed the Guaranteed Note on behalf of Kids Only II as a guarantor.[7] The Guaranteed Note has been in default since July 4, 2013.

On or about January 13, 2015, RREF filed a *Petition To Foreclose By Ordinary Process* with the 15th Judicial District Court for Lafayette Parish, in the State of Louisiana (the "**State Court**"). The State Court entered a preliminary default against Kids Only II on May 26, 2015. Shortly after, Kids Only II finally filed an answer May 28, 2015.

On or about July 1, 2015, RREF filed a motion for summary judgment (the "**Motion for Summary Judgment**"). However, in the light of certain circumstances,[8] RREF filed its *Ex Parte Motion to Continue Hearing* on or about August 13, 2015, through which it requested the State Court continue the hearing on its Motion for Summary Judgment to a date after August 24, 2015. The State Court entered an order resetting the Motion for Summary Judgment hearing for September 28, 2015. The Motion for Summary Judgment hearing was subsequently reset for November 2, 2015. Before the hearing on the Motion for Summary Judgment could take place, the Debtor filed the instant bankruptcy, invoking the automatic stay.

---

[7] Kids Only II also executed a commercial guaranty (the "**Commercial Guaranty**"), through which it agreed to guarantee payment of Kids Only III's present and future indebtedness in favor of Regions on a continuing basis. "Indebtedness" was defined as "individually, collectively, interchangeably and without limitation any all present and future loans, loan advances, extensions of credit, obligations and/or liabilities, that [Kids Only III] may now and/or in the future owe to and/or incur in favor of Regions, whether direct or indirect, or by way of assignment . . . whether absolute or contingent . . . due or to become due, secured or unsecured . . . In addition, all interest thereon, costs, expenses, attorneys' fees and other fees and charges related thereto under [Kids Only III's] Indebtedness shall be fully guaranteed hereunder."

[8] RREF sought a continuation of the hearing on its Motion for Summary Judgment because it had recently filed a *Motion to Remove Opposing Counsel as Counsel of Record* due to the closure of opposing counsel's law practice (as well as the unavailability of opposing counsel to receive service or otherwise communicate in a timely manner).

## C. THE DEBTOR'S SECOND BANKRUPTCY

The Debtor's recent schedules list assets with an alleged-combined value of $382,700.00 and liabilities amounting to $188,325.19. The Debtor's List of Creditors Holding 20 Largest Unsecured Claims provides one creditor—the IRS—with a claim for past payroll taxes amounting to $63,325.19. [Dkt. #1].[9] In addition to the alleged claim held by the IRS, the Debtor provides it is indebted to RREF in the amount of $125,000.00.

As of the Petition Date, the amount due and owing to RREF by Kids Only II was as follows:

a. Under the First Amended Note, $145,148.45 ($101,802.03 in principal; and $43,346.42 in interest). Pursuant to the First Amended Note and the assigned Mortgage, the Debtor is also obligated for all reasonable attorneys' fees and costs associated with collecting the amounts owed.

b. Under the Second Amended Note, $123,783.40 ($102,620.62 in principal; $18,354.91 in interest; and $2,807.87 in taxes and insurance). Pursuant to the Second Amended Note and the assigned MIM, the Debtor is also obligated for all reasonable attorneys' fees and costs associated with collecting the amounts owed.

c. Under the Guaranteed Note, $124,285.29 ($83,570.52 in principal; $35,591.61 in interest; and $5,123.16 in property taxes). Pursuant to the Commercial Guaranty, Kids Only II agreed to "pay upon demand" all "attorneys' fees and other fees and charges related" to the guaranteed amounts.

---

[9] The Debtor does not specify the years for which these payroll taxes are past due and/or owing. Also, the Lafayette Parish Tax Collector held a claim for $3,500.00 regarding 2010 "property and contents taxes." [First Bankruptcy, Dkt. #1].

The Debtor's alleged total assets are based on the value of its personal property—valued at $32,700.00—and the value of the Second Encumbered Property. Although the Debtor stated in its First Bankruptcy that the Second Encumbered Property was valued at $150,000.00, the Debtor now alleges the same property is valued at $350,000.00. The Debtor has not provided any explanation for the purported $200,000.00 increase in value.

Assuming (but certainly not conceding) the accuracy of the recently alleged value of the Second Encumbered Property and the amount owed to the IRS, then the value of the Debtor's assets, at best, exceeds liabilities (considering both the First Amended Note and the Second Amended Note) by approximately $34,832.08. Alternatively, if the amount owed under the Guaranteed Note is included, then the Debtor's liabilities exceed its assets by approximately $98,679.90.

### III. RELIEF REQUESTED

By this Motion and pursuant to 11 U.S.C. § 362, RREF requests this Court enter an order terminating the automatic stay and authorizing RREF, and/or persons acting on its behalf, to proceed in exercising any and all of its rights and interests relating to the First and Second Encumbered Property including, but not limited to, proceeding with the pending litigation in State Court.

### IV. ARGUMENT AND AUTHORITY

**A.** *The Stay Should Be Terminated For Cause Pursuant To Section 362(d)(1)*

Section 362(d)(1) sets forth grounds for relief from the automatic stay and provides that a court "shall grant relief" by, *inter alia*, terminating the stay. Pursuant to section 362(d)(1), a court shall terminate the automatic stay for "cause" (including, but not limited to, lack of adequate protection of a party in interest). "Cause" pursuant to section 362(d)(1) exists and

warrants termination of the automatic stay because the Debtor filed its chapter 11 petition in bad faith.

Courts have found that, because good faith is required to commence a chapter 11 case, a lack of good faith—or bad faith—constitutes "cause." *See Matter of Reitnauer*, 152 F.3d 341 (5th Cir. 1998); *In re WGMJR*, 435 B.R. at 433 (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986)). The good faith requirement imposed on all debtors seeking the protection of the bankruptcy courts prevents abuse of the bankruptcy process and safeguards the integrity of the courts by only permitting those with clean hands to avail themselves of the Bankruptcy Code's "powerful equitable weapons." *In re Little Creek Dev. Co.*, 779 F.2d at 1072.

The Fifth Circuit has explained that whether a chapter 11 petition is filed in bad faith "depends largely on the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Executive Air Center, Inc.*, 60 B.R. 652 (Bankr. W.D. La. 1986); *see also In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362 at *3 (Bankr. N.D. Tex. Jan. 26, 2005).

The sole purpose for the Debtor's chapter 11 filing is to improperly use the bankruptcy system by frustrating RREF's legitimate efforts to enforce its rights as a secured creditor. As foreclosure proceedings are pending, the timing of the Debtor's filing is evidence of its intent to delay and/or prevent the foreclosure of the Encumbered Properties. By filing for bankruptcy on the same date as Kids Only III, the Debtor sought to block RREF's attempts to obtain payment on the defaulted loans from any avenue. As explained previously, the debt owed pursuant to the First Amended Note is secured by the MIM, which grants the mortgagee (here, RREF) all present and future rights, title and interest in the First Encumbered Property. Upon information

and belief, the First Encumbered Property is owned by Kids Only III and was only granted to Kids Only II on a limited basis for securing the debt owed pursuant First Amended Note. Furthermore, pursuant to the Guaranteed Note and the Commercial Guaranty, Kids Only II guaranteed Kids Only III's indebtedness to RREF.

The estates of Kids Only II and Kids Only III are clearly intertwined and yet, neither debtor has listed the other as a co-debtor or sought joint administration of these pending chapter 11 cases. Kids Only III filed for bankruptcy to delay and/or prevent the foreclosure on the First Encumbered Property under the Guaranteed Note. Kids Only II filed for bankruptcy to prevent RREF from legitimately seeking payment on the Guaranteed Note pursuant to the Commercial Guaranty and to prevent foreclosure on the Second Encumbered Property. By filing for chapter 11 protection and thereby attempting to invoke the automatic stay,[10] Kids Only II and Kids Only III have sought to cut off the primary sources from which RREF may be paid on any indebtedness.

RREF is the only secured creditor of the Debtor; therefore, this Chapter 11 Case is essentially a two-party dispute. Furthermore, bankruptcy abuses common to single asset real estate cases are prolific here. Collier on Bankruptcy provides that "the very factors often considered in a bad faith analysis are patterned after a single asset case. Those factors include few employees, few unsecured creditors, only one asset, one principal secured creditor, posting of the debtor's only asset for foreclosure and perceived inability to reorganize due to creditor opposition." 3-362 Collier on Bankruptcy P. 362.07. Additionally, the most significant asset in this Chapter 11 Case—the Second Encumbered Property—is the subject of the pending

---

[10] Regardless, RREF contends that, pursuant to 11 U.S.C. § 362(n), the automatic stay does not apply in Kids Only III's pending Chapter 11 Case.

{JX182444.1}   11

foreclosure action resulting from the Debtor's defaults. The Debtor's other assets, all of which are listed in the Debtor's schedules as personal property, are of comparatively little value.

As discussed above, the Debtor's filings in this Chapter 11 Case are woefully inaccurate. Through its schedules, the Debtor listed a secured claim for RREF in the amount of $125,000.00, an amount that is well over $100,000.00 *less* than Kids Only II's total indebtedness to RREF. The amount owed to RREF by the Debtor is, at the very least, $284.542.73 (this amount does not consider any amounts owed jointly and/or severally under the Guaranteed Note). Consequently, the Debtor has been less than honest and forthcoming in its schedules and statement of financial affairs.[11] The preceding demonstrates that the Debtor filed its chapter 11 petition in bad faith.

B.  ***The Debtor Lacks Equity In The Encumbered Property And It Is Not Necessary For An Effective Reorganization***

Relief from the automatic stay may be granted if both prongs are met under section 362(d)(2). Under the first prong, the debtor must have no equity in the subject property. 11 U.S.C. § 362(d)(2)(A). Under the second prong, the subject property must not be necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B).

Section 362(g) then allocates the burden of proof in relief from stay as follows:

>   (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
>   (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

---

[11]  Bankruptcy courts in this circuit have determined that "[a] failure to disclose information (leaving a 'blank') in a bankruptcy schedule or statement of financial affairs is an affirmative statement that there is no information reasonably available to the Debtor that is responsive to that question"; therefore, "[a]n incorrect affirmative statement is not inadvertence." *See e.g.*, *In re Bilstat, Inc.*, 314 B.R. 603, 610 (Bankr. S.D. Tex. 2004); *In re Walker*, 323 B.R. 188, 197 (Bankr. S.D. Tex. 2005). As a result, false statements by a debtor evidence a reckless disregard for the truth, warranting a finding of bad faith.

The secured lender has the burden to establish the debtor's lack of equity in the property for which stay relief is sought. *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 576 (5th Cir. 1991). Once the secured lender establishes that the debtor has no equity in the property for which stay relief is sought, the burden then shifts to the debtor to establish that the property is necessary to an effective reorganization. *Id.*

1. **The Debtor Lacks Equity In The Encumbered Property**

"'Equity' as used in Section 362(d)(2) means the difference between the value of the subject property and the encumbrances against it." *In re WGMJR*, 435 B.R. at 432. Here, the encumbrances against the Encumbered Property are more than its value. Although the Debtor stated in its First Bankruptcy that the Encumbered Property was valued at $150,000.00, the Debtor, through its schedules, now alleges the same property is valued at $350,000.00. The Debtor also contends the debt owed to RREF amounts to only $125,000.00. This amount is wholly inaccurate. As explained previously, the amount due and owing to RREF as of the Petition Date is at least $284.542.73. Using this amount, the alleged value of the Encumbered Property exceeds the Debtor's liabilities by $2,132.08. Even then, the Debtor is still obligated to RREF for all reasonable attorney's fees and costs associated with collecting the amounts owed. The result is that there is little to no equity in the Encumbered Property.

2. **No Possibility Of An Effective Reorganization**

Whether property is necessary for an effective reorganization depends first on whether the debtor has a reasonable prospect for a successful reorganization within a reasonable time. *In re WGMJR*, 435 B.R. at 432. To do this, "the debtor must do more than evince high hopes." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371 (5th Cir. 1987) *aff'd sub nom. United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

Here, the Debtor does not have a reasonable prospect for a successful reorganization within a reasonable time. In addition to creditor opposition, the Debtor cannot fund a chapter 11 plan. As of the date of this Motion, the Debtor has failed to file either a cash flow statement or a recent balance sheet, both of which must be appended to a petition pursuant to 11 U.S.C. § 1116. However, as illustrated by its Statement of Operations for Small Business, the Debtor's net income for the time period January 1, 2015, through October 19, 2015, was $64,230.92. [Dkt. #12]. Based on this amount, the Debtor has not been operating at a loss. Nevertheless, the Debtor's net income is as much as $64,230.92 only because the Debtor has failed to make any and/or all payments on the First Amended Note as of June 3, 2013 and/or all payments on the Second Amended Note since July 3, 2013. Because the Debtor does not have sufficient cash flow or a sufficient source of income with which to properly fund a chapter 11 plan, the Second Encumbered Property is not necessary to an effective reorganization; this in conjunction with little to no equity, leads to the inescapable conclusion that the automatic stay must be terminated.

C. *The Stay Should Be Terminated To Address SARE Abuses Pursuant To Section 362(d)(3)*

Finally, pursuant to section 362(d)(3), a court shall terminate a stay of an act against single asset real estate ("SARE") by a creditor whose claim is secured by an interest in the SARE, unless:

> not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> (A)   the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B)   the debtor has commenced monthly payments that—

> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate[.]

The three requirements for consideration of this provision are: (1) the debtor has "real property constituting a single property or project," (2) the property generates "substantially all of the gross income of the debtor," and (3) no substantial business is conducted "other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B).

Section 362(d)(3) was enacted to protect creditors from perceived abuses by debtors while simultaneously aiding courts by removing the "bad faith" analysis in cases that meet the section's criteria. *See, e.g.*, *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) (explaining how Fifth Circuit defined such debtors before the introduction of the statutory definition and why these debtors deserved attention to prevent abusive petitions); *In re RIM Dev. LLC*, 448 B.R. 280 (Bankr. D. Kan. 2010) (explaining stay relief under section 362(d)(4) is mandatory in single asset chapter 11 case if debtor is not making the required interest payments and if plan filed by debtor is not confirmable).

If this Court determines this Chapter 11 Case is not a small-business case as the Debtor alleges, then RREF contends this case is a single asset real estate case. Section 362(d)(3) is meant to address "perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3-362 Collier on Bankruptcy P. 362.07. Those perceived bankruptcy

abuses are occurring in this Chapter 11 Case. The Debtor has filed its second petition under chapter 11 to prevent the foreclosure of the Encumbered Properties even though, as explained above, the Debtor has little chance of reorganizing successfully. Because the Debtor has not satisfied the requirements under 362(d)(3)(A) or (B) by filing a chapter 11 plan or making any monthly payments to RREF, the automatic stay should be terminated.

## V. CONCLUSION

WHEREFORE, RREF requests this Court enter an order terminating the automatic stay pursuant 11 U.S.C. § 362(d)(1) and/or (2). Alternatively, RREF requests this Court enter an order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(3), and grant such other and further relief as the Court deems just and appropriate.

      /s/ *Laura F, Ashley*
Laura F. Ashley (LA Bar No. 32820)
Jones Walker, LLP
201 St. Charles Avenue
Suite 5100
New Orleans, LA  70170-5100
504-582-8118
lashley@joneswalker.com
*Attorneys for RREF II PEBP-LA, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, and served upon all parties receiving notice pursuant to the CM/ECF system on this the 14th day of December, 2015.

                                              /s/ *Laura F. Ashley*